UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| PAUL E. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-163-ART |
| | ) | |
| v. | ) | |
| | ) | |
| LETCHER COUNTY FISCAL COURT, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On August 18, 2008, Plaintiff Paul Hall brought Eighth Amendment claims under 42 U.S.C. § 1983 and state-law negligence claims. R. 1. Hall's claims arise out of a slip and fall that broke his wrist when he was an inmate at the Letcher County Jail on September 15, 2007. The following defendants remain in the case: the Letcher County Fiscal Court, Letcher County Jailer Donald McCall in his individual and official capacities, and Letcher County Judge Executive Jim Ward in his individual and official capacities. Hall named Letcher County Jail employees John Doe #1-4 in the complaint, but never identified or served them. The parties agreed to dismiss the unidentified defendants. R. 25.

The defendants filed their motion for summary judgment on September 8, 2009. R. 14. On September 30, 2009, Hall filed his response to the defendants' motion, R. 17, and the defendants filed their reply, R. 19, on October 7, 2009. The Court held a hearing on the defendants' motion on November 17, 2009. R. 25.

For the foregoing reasons, McCall and Ward in their individual capacities are entitled to

summary judgment on all of Hall's § 1983 claims.  The Court also grants summary judgment to the Letcher County Fiscal Court and McCall and Ward in their official capacities on the state law negligence claims and Hall's § 1983 claims about the conditions of the jail.  The state law negligence claims against McCall and Ward in their individual capacities remain pending.

Concurrent with this Memorandum Opinion and Order, the Court will issue an Order for Hall to Show Cause why the § 1983 deliberate indifference to medical care claims against the Letcher County Fiscal Court and McCall and Ward in their official capacities should not be dismissed for the reasons set forth in the Order to Show Cause.  A ruling on those claims is forthcoming.

## I. BACKGROUND

After pleading guilty to receiving stolen property in Letcher Circuit Court, Hall received a thirty-day sentence to be served at the jail.  R. 18, Ex. 13, Conviction Order.  Hall began serving his sentence on September 12, 2007.  R. 14, Ex. 5, Jail File.  On Saturday, September 15, 2007, at approximately 9:15 p.m., Hall slipped and fell because of a pool of water on the jail floor.  R. 14, Ex. 1.  Hall broke his wrist bone.  *Id.*  Deputy Jailer Ed Paige took Hall to the Appalachian Regional Healthcare facility ("ARH") in Whitesburg, Kentucky, where Dr. Suniljit Singh gave Hall a temporary cast less than two hours after his fall.  *Id.*  Dr. Singh told Hall to call Dr. Sharma, an orthopedic specialist at the ARH in Hazard, Kentucky, on Monday, September 17, 2007, for an appointment.  R. 18, Ex. 2 at 2.  Dr. Singh also instructed Hall to wear a splint and a sling, use ice packs, and take prescribed pain medication.  *Id.*  Hall then returned to the jail.  R. 14, Ex. 2, Time Line of Events.

2

On September 17 and 18, 2007, Jailer McCall called and left messages with Dr. Sharma's office to get an appointment for Hall.  R. 18, Ex. 2 at 2.  McCall said he did not receive a call back from Dr. Sharma's office so on September 19, 2007, he called Dr. Vincent Arroz to set up an appointment for Hall at the ARH in Whitesburg.  R. 14, Ex. 2.  Hall saw Dr. Arroz that day and received a cast on his broken wrist.  *Id.*; R. 18, Ex. 2 at 3.  Hall returned to see Dr. Arroz at ARH on the afternoon of September 20, 2007.  R. 14, Ex. 2.  On that day, and while Hall was at the hospital, the Letcher Circuit Court ordered Hall to be released on "unsupervised home incarceration for the remainder of his sentence due to [his] health conditions and a recent injury."  R. 18, Exs. 1, 12.  Hall served only eight days of his thirty-day sentence.

Thereafter, Hall went to see Dr. Kevin Pugh at the Pikeville Medical Center on November 13, 2007.  R. 18, Ex. 5.  According to Dr. Pugh, Hall's wrist required surgery that involved replacing a portion of his wrist bone with bone from his hip.  R. 17 at 8.  Hall suffers from some permanent loss of function in his wrist.  *Id.*  Hall's lawsuit against the defendants stem from these injuries.

## II. INITIAL MATTERS

### A.  Hall's 56(f) Request

Hall argues that the defendants should be compelled to produce discovery pursuant to Fed. R. Civ. P. 56(f) in order to respond to the motion for summary judgment.  R. 17 at 19-20.  Hall's 56(f) request is simply an attempt to circumvent the Court's discovery deadline and, thus, must be denied.  *See Mallory v. Noble Corral. Inst.,* 45 F. App'x 463, 469 (6th Cir. 2002) ("Court after court has made clear that the protection that Rule 56(f) provides is not intended to

3

shield counsel who were dilatory in conducting discovery."); *see also Schaffer v. A.O. Smith Harvestore Prods. Inc.,* 74 F.3d 722, 732 (6th Cir. 1996) ("Rule 56(f) is not a substitute for diligently pursuing discovery.").

It is clear that Hall failed to diligently pursue discovery. Inexplicably, Hall never deposed any of the defendants during the discovery period. During discovery, he never sought to compel any discovery that he was not provided. As the Sixth Circuit has stated, "Rule 56(f) protects parties that cannot, for valid reasons, sufficiently oppose a motion for summary judgment." *Mallory*, 45 F. App'x at 469. Hall simply has not given a valid reason for the Court to extend discovery at this late date.

Hall claims that irrespective of the Court's deadline, the parties agreed to continue discovery, *see* R. 17 at 6, and as a result, the Court should now delay ruling on the defendants' motion so he can continue his discovery. Parties, however, that continue to provide discovery after the discovery deadline do so gratuitously. Discovery in this case concluded on July 1, 2009. R. 8. The parties asked for, but did not receive, an extension of the discovery deadline. *See* R. 12. Any agreement to continue discovery was not made pursuant to an order of the Court. Further, a Scheduling Order may only be modified with the Court's consent. Fed. R. Civ. P. 16(b)(4). When the parties agree to provide discovery past the Court's deadline, that agreement does not come under a Court order and will not be policed by the Court. *Cf. AB Diversified Enters., Inc. v. Global Transp. Logistics, Inc.*, No. 06-CV-21308, 2007 WL 1362632, at *1 (S.D. Fla. 2007) ("In the event the parties agree among themselves to extend the discovery deadline, and without Court approval as is the case here, they must do so with the clear understanding that

4

the Court will not mediate any resulting dispute.").  Otherwise, the parties would always be free to ignore discovery deadlines of the Court.  And, if the Court now was to extend the discovery deadline because of Hall's lack of diligence, deadlines of the Court would simply mean nothing. Accordingly, Hall's 56(f) request lacks merit and is denied.

### B.  The Defendants' PLRA Argument

The defendants argue that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a), bars Hall's § 1983 claims because Hall failed to exhaust his administrative remedies. *See* R. 14 at 9-11.  The defendants are incorrect because the PLRA does not apply to this lawsuit since Hall was not a "prisoner" when he filed the lawsuit.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, *by a prisoner* confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (emphasis added).  The jail released Hall on September 20, 2007.  R. 18, Ex. 1 ¶ 12.  Hall filed his complaint on August 18, 2008, R. 1.  By its terms, the PLRA does not require Hall to exhaust his administrative remedies before filing this lawsuit because Hall was not a "prisoner" when he filed this lawsuit.  *See Norton v. City of Marietta, OK*, 432 F.3d 1145, 1150 (10th Cir. 2005) ("other circuits have concluded that a plaintiff who seeks to bring suit about prison life after he has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit") (collecting cases holding the same).

5

### III. HALL'S § 1983 CLAIMS

The defendants move for summary judgment on all of Hall's § 1983 claims. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, the defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Hall's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Hall, as the nonmoving party, must then present sufficient evidence from which a jury could reasonably find for him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 242. In making this determination, the Court must draw all reasonable inferences in favor of Hall. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

For Hall's claims to survive the defendants' motion for summary judgment, Hall must demonstrate a genuine issue of material fact as to the following two elements of a § 1983 action:

> (1) the deprivation of a right secured by the Constitution or laws of the United States, and
>
> (2) [that] the deprivation was caused by a person acting under color of state law.

*Miller v. Calhoun County,* 408 F.3d 803, 812 (6th Cir. 2005) (citation omitted). The defendants do not dispute they were acting under the scope of state law. Thus, the issue is whether each of the defendants deprived Hall of a right secured by the Constitution.

6

The following defendants are before the Court:

(1)     Letcher County Jailer Donald McCall in his individual and official capacities,

(2)     Letcher County Judge Executive Jim Ward in his individual and official capacities, and

(3)     The Letcher County Fiscal Court.

Hall's claims against McCall in his official capacity and Ward in his official capacity are the equivalent of a suit against the entity on whose behalf they acted—the Letcher County Fiscal Court. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). For purposes of the motion for summary judgment, Defendants Letcher County Fiscal Court, McCall in his official capacity, and Ward in his official capacity will be referred to collectively as the "County Defendants."

Hall's § 1983 claims allege that the defendants violated his Eighth Amendment rights by: (1) being deliberately indifferent to his medical care needs, R. 1 ¶ 17-25, and (2) operating the jail facility under unconstitutional conditions, R. 1 ¶ 13-15.

### A.  Deliberate Indifference to Medical Care

Hall claims the defendants were deliberately indifferent to his serious medical needs by (1) failing to get him proper medical treatment for his broken wrist and (2) by failing to timely administer his pain medication. He is wrong on both claims.

Incorporated to the states by the Fourteenth Amendment, the Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). An inmate must show that the defendant acted with "deliberate indifference to his serious medical needs" to show an Eighth Amendment violation under § 1983. *Dominguez v.*

7

*Corral. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A claim of deliberate indifference to medical needs under § 1983 has two components. *Dominguez,* 555 F.3d at 550.  First, the objective component requires the plaintiff to show a "serious medical need."  *Id*.  Second, the subjective component requires the plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Id*. (citation omitted).  The subjective component "'is meant to prevent the constitutionalization of medical malpractice claims.'"  *Id*. (citation omitted).  It also requires a defendant to have a "sufficiently culpable state of mind."  *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The defendants do not challenge the objective component that Hall had a "serious medical need."  The dispute here is over the subjective component.

### 1.  Hall's Right to Medical Treatment

The relevant facts regarding Hall's medical care claim are largely undisputed.  Hall broke his wrist, went to the hospital, and received medical care on the evening of Saturday, September 15, 2007.  At this initial hospital visit and before he returned to the jail, Dr. Singh instructed Hall to make an appointment to see Dr. Sharma, an orthopedic specialist, on Monday, September 17, 2007.  It is not clear from the record whether Dr. Singh thought Hall should actually see Dr. Sharma on that date or merely make the appointment to see Dr. Sharma on that date.  *See* R. 18, Ex. 2 at 2.  Dr. Singh's handwritten note merely states "call Dr. Sharma Monday."  *Id*.  The jail's

incident report related to Hall's initial hospital treatment by Dr. Singh dated September 15, 2007, states "a appointment is to be made by Jail staff Monday morning at Hazard ARH with Dr. Sharma Phone # (606) 487-0888."  R. 18, Ex. 9.

After his initial hospital treatment, Hall did not see a doctor again until Wednesday, September 19.  Accordingly, Hall claims that the defendants were deliberately indifferent to his need to see an orthopedic specialist.  He is incorrect.

### a. Letcher County Jailer McCall in his Individual Capacity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dominguez*, 555 F.3d at 549 (quoting *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008)).  There is no genuine issue of fact as to whether McCall was deliberately indifferent to Hall's right to medical treatment.  McCall was not deliberately indifferent and is entitled to qualified immunity.

On Monday, September 17, McCall did exactly what Dr. Singh recommended—he called Dr. Sharma's office and attempted to obtain an appointment for Hall.  McCall introduced substantial evidence that he made calls to Dr. Sharma's office on both September 17 and September 18.  *See* R. 14, Ex. 4.  McCall also introduced a "Time Line of Events" showing that he called Dr. Sharma's office at 1:45 p.m. on September 17, and called again at 11:03 a.m. on September 18.  R. 14, Ex. 2.  Further, McCall submitted a sworn statement that he called Dr. Sharma's office on September 17 and 18, to get an appointment for Hall.  R. 19, Ex. 2 at 12.

9

Hall did not introduce any evidence to the contrary.  When McCall was unable to get an appointment with Dr. Sharma or even a call back from his offices, McCall instead scheduled an appointment with Dr. Arroz for Wednesday, September 19.  R. 19, Ex. 2 at 12; R. 14, Exs. 2, 4.

In response, Hall claims there is "no evidence of record that McCall actually sought to have Hall seen as per [Dr. Singh's] instructions."  R. 17 at 14 n 6.  Hall also states that "McCall affirmatively decided not to arrange for Hall's necessary care."  *Id*.  Hall's own exhibits contradict these assertions.  Indeed, Hall introduced phone records from the jail verifying McCall's calls to Dr. Sharma's office consistent with what McCall claims.  *See* R. 18, Ex. 9 at 3.  Also, later in his response memorandum, Hall does not dispute the fact that McCall made the calls to Sharma's office.  *See* R. 17 at 25.  The only other evidence Hall submitted directly related to McCall was an affidavit of Hall's mother that states she called McCall multiple times to request medical care for her son during the time period in question.  R. 18, Ex. 11, Alta Hall Aff.[1]  This affidavit, however, does not create a material issue of fact of whether McCall was deliberately indifferent to Hall's medical care.  Rather, the record shows the opposite.

"'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'"  *Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) (quoting *Farmer*, 511

---

[1]According to Alta Hall's sworn statement, Hall called her on Sunday, September 16, 2007, to inform her of his injury and his need to see an orthopedic specialist in Hazard.  R. 18, Ex. 11.  There is no evidence that Hall's mother called to try to get him an appointment with Dr. Sharma.  Further, Hall had access to a phone in the jail.  *Id*.  Yet, there is no evidence that Hall himself attempted to call Dr. Sharma's office to schedule an appointment.  Apparently if they did, they were as unsuccessful as McCall since they do not complain that they actually obtained an appointment.

U.S. at 844).   McCall responded reasonably to Hall's need.   McCall tried to get Hall an appointment to see a specialist on two separate occasions, and when he was unable to do so, McCall made an appointment for Hall with Dr. Arroz.   Just because McCall was ultimately unsuccessful in getting Hall an appointment with Dr. Sharma does not mean he was deliberately indifferent to Hall's need for medical treatment.   It is often difficult to make an immediate appointment with a specialist physician.[2]

Hall introduced affidavits from two other inmates at the jail that heard him requesting medical care.   R. 18, Ex. 3 ¶ 14; R. 18, Ex. 4 ¶ 16.   Hall also submitted his own affidavit that "LCJ guards" ignored his requests for medical care and he shouted out repeatedly in pain.   R 18, Ex. 1 ¶ 9.   These affidavits, however, do not create a material issue of fact because McCall actively tried to get Hall an appointment to see the orthopedic specialist.   McCall knew that Hall needed medical care, and he tried to secure an appointment for Hall.   Being deliberately indifferent is the equivalent of ignoring Hall's needs which it is undisputed McCall did not do.   Accordingly, McCall did not violate Hall's clearly established constitutional rights.   As such, McCall is entitled to qualified immunity on this claim.

**b. Letcher County Judge Executive Ward in his Individual Capacity**

There is also no genuine issue of fact as to whether Ward was deliberately indifferent to Hall's right to medical treatment.   He was not and, as a result, is entitled to qualified immunity.

---

[2]Hall introduced no evidence that it was even feasible to get an appointment with this specialist in such a prompt fashion.   Hall could have deposed Dr. Sharma or someone on his staff to show that either they returned the call or that appointments were available on that day.   For whatever reason, however, Hall did not.

Ward is barely mentioned in any of the briefs or exhibits in this case and Hall has put forth no evidence to support a ruling against him. *See Anderson*, 477 U.S. at 248. There is one piece of evidence in the record concerning Ward. Hall introduced the Letcher Circuit Court Order that stated that Hall would be released on "unsupervised home incarceration for the remainder of his sentence due to health conditions and a recent injury." R. 18, Ex. 12 at 2. The court order did not include any information related to the severity of Hall's injury nor any information concerning Hall's need for subsequent medical treatment. This court order was faxed to Ward's office, but there is no proof that Ward actually read the fax. Further, based on this one piece of evidence, Ward could not have learned of Hall's injury until after his release from the jail. Even viewing the fax in the light most favorable to Hall, it does not show that Ward "perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Dominguez,* 555 F.3d at 550. Ward was not deliberately indifferent to Hall's need for medical treatment and is entitled to summary judgment on this claim.

## 2. Hall's Need for Pain Medication

Hall claims that the defendants were deliberately indifferent to his need for pain medication. He is incorrect. Hall's complaint and both parties' briefs are not models of clarity with respect to this claim. Hall alleges he was denied his pain medication, but he does not specifically address when he was denied his medication or which jail official(s) refused to provide him the medication. The Court has no obligation to comb through the record to construe Hall's argument. *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 110-11 (6th Cir. 1989).

At his initial hospital visit on September 15, Dr. Singh gave Hall two Percocet pills to take back to the jail and a prescription for Percocet. R. 14, Exhibit 1. Dr. Singh directed Hall to take one Percocet every four hours "as needed for pain." *Id*; Exhibit 4 at 2. McCall filled Hall's prescription at the Parkway Pharmacy in Whitesburg on Monday, September 17. *Id.* at 3.[3] In his affidavit, Hall claims that even though he was "supposed to receive [his] prescription once each four hours, LCJ Guards did not provide [him] with medication for periods of time that often exceeded ten hours." R. 18, Exhibit 1 at ¶ 9. It is not clear if Hall is referring to the period of time before McCall filled his prescription or after.

### a. McCall in his Individual Capacity

There is no genuine issue of fact as to whether McCall was deliberately indifferent to Hall's need for pain medication. He was not deliberately indifferent. McCall filled Hall's prescription on September 17, and introduced the receipt from the pharmacy as an exhibit to his motion. R. 14, Ex. 2; R. 14, Ex. 4 at 3. Hall did not brief or introduce any evidence that McCall knew of Hall's need for pain medication on September 16, or anytime before McCall filled the prescription on September 17.

In his deposition, Hall admits that he never spoke with McCall about his injury until after his release from the jail. R. 13 at 20. Hall has failed to show any fact that shows that McCall

---

[3]After the Court held the hearing on the motion for summary judgment, the defendants filed Hall's medication log sheet in the record. R. 24. The defendants, however, did not file a memorandum explaining the contents of the log sheet. Because the log sheet was not timely filed as an exhibit to the defendants' motion for summary judgment and Hall has not had an opportunity to respond to its contents, the Court will not consider the log sheet for purposes of ruling on the defendants' motion.

13

knew of Hall's need for medication and then disregarded the risk to Hall associated with not providing it. *See Dominguez,* 555 F.3d at 550.

According to McCall's sworn statement, the "shift supervisors" were responsible for dispensing medication at the jail. R. 19, Exhibit 2 at 12. None of the shift supervisors are defendants in Hall's lawsuit. Hall introduced an affidavit from an inmate claiming that "the guards and LC[J] employees were aware that their refusal to regularly dispense medication would cause harm." R. 18, Ex. 4 ¶ 9. A different inmate made the troubling allegation in a sworn statement that he is a diabetic and the jail's "medical staff" failed on "several occasions" to give him his medicine in a timely fashion. R. 18, Ex. 3 ¶ 8-9. Hall also submitted an affidavit that "LCJ guards" did not give him his medicine at proper intervals—often exceeding ten hours. R 18, Ex. 1 ¶ 9. A § 1983 plaintiff must show facts relating to the individual culpability of each defendant. *See Arnold v. Lexington-Fayette Urban County Gov.*, No. 08-CV-5960, 2009 WL 3837655, at *1 (6th Cir. Nov. 17, 2009) (citing *Phillips*, 534 F.3d at 541-42). It is improper to consider the actions of the defendants collectively as a group in a § 1983 action. *Id.* The proper inquiry under § 1983 is to determine what each defendant knew about Hall's condition, when he knew it, and what, if anything, he did to address it. *Id.* Applying this standard, the affidavits of Hall and the two other inmates do not show McCall's culpability because they generally refer to "LCJ guards" or "medical staff." None of the affidavits identifies McCall by name or by his title as "Jailer." While it may be that jail officials did not give Hall his medication in a timely fashion, Hall has failed to show that there is a material issue of fact as to whether McCall was deliberately indifferent to his need for pain medication.

14

### b.  Ward in his Individual Capacity

There is no evidence that Ward had any knowledge of Hall's need for pain medication. The Letcher Circuit Court Order faxed to Ward's office did not include any information related to Hall's need for pain medication.  R. 18, Ex. 12 at 2.  Thus, for the same reasons stated in section 1b above, there is no genuine issue of material fact as to whether Ward was deliberately indifferent to Hall's need for pain medication.  *See Dominguez,* 555 F.3d at 550.

### B.  Jail Conditions

In his complaint, Hall complained about the conditions of the jail.  R. 1 ¶ 13-15.  In their motion for summary judgment, the defendants state that Hall did not show how the jail conditions violated his clearly established constitutional rights.  R. 14 at 8-9.  The defendants are correct.

It is well established that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347-49).  Also, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Hall has not demonstrated how the condition of the jail resulted in "excessive risk to inmate health or safety."  Hall makes vague assertions about the condition of the jail, *see* R. 17 at 11-12, but does not tie together how the conditions violated his clearly established constitutional rights.  It is not the Court's job to comb the record in search

15

of evidence and case law supporting his argument. *See InterRoyal Corp*, 889 F.2d at 110-11 ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). Hall simply makes a few assertions as to the jail conditions, but does not refute the defendants' legal argument in any way. The defendants cite *Wilson* and *Farmer* in support of their argument, but Hall does not cite a single case is support of his argument in response. In short, Hall has not demonstrated that the jail conditions resulted in a constitutional deprivation. As such, all of the defendants are entitled to qualified immunity on this claim. *See Dominguez*, 555 F.3d at 549.

## IV. HALL'S STATE LAW NEGLIGENCE CLAIMS

Hall also brings state law claims, alleging that the defendants either "negligently or grossly negligently, created an unsafe condition or suffered an unsafe condition to exist in the common area of the Letcher County Jail with knowledge of its presence and with reckless indifference to the danger to the Plaintiff created thereby." R. 1 ¶ 41. In their motion, the defendants claim that sovereign immunity bars Hall's claims against Letcher County and Ward and McCall in their official capacities. R. 14 at 16-17. The defendants are correct.

Under Kentucky state law, "Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments." *Doe v Magoffin County Fiscal Ct.*, 174 F. App'x 962, 971 (6th Cir. 2006) (citing *Bd. of Claims of Ky. v. Banks*, 31 S.W.3d 436, 439 (Ky. Ct. App. 2000)). Further, under Kentucky law, "an officer sued in his official capacity receives the same kind of immunity that

protects the state or governmental agency for which he or she works." *Magoffin County Fiscal Ct.*, 174 F. App'x at 971 (citing *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2002)). Thus, the Court dismisses the state law negligence claims against the County Defendants as a matter of Kentucky law on sovereign immunity.

The defendants did not move for summary judgment on the state law negligence claims against McCall and Ward in their individual capacities. At the hearing, the defendants claimed they raised this issue in their brief. However, the defendants' memorandum supporting their motion for summary judgement does not mention the state law negligence claims with respect to McCall and Ward in their individual capacities. *See* R. 14 at 16-17. Therefore, the merits of those claims will not be addressed here and remain pending.

Moreover, the parties conceded at the hearing that the Court has supplemental jurisdiction over these remaining state law negligence claims under 28 U.S.C. § 1367(a). Even if all the federal claims under § 1983 are ultimately dismissed, the Court has discretion to retain supplemental jurisdiction over the remaining state law claims at this stage. *See Harper v. Autoalliance Int'l, Inc*., 392 F.3d 195, 210-211 (6th Cir. 2004). This case has been pending for over fifteen months and the discovery deadline has passed. The Court is familiar with the issues in this case. Accordingly, in the interests of judicial economy, the Court will exercise supplemental jurisdiction over the state law negligence claims against McCall and Ward in their individual capacities.

17

## V.  CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)  The defendants' motion for summary judgment, R. 14, is **GRANTED** with respect to all of Hall's § 1983 claims against Defendants McCall and Ward in their individual capacities.

(2)  The state law negligence claims against Defendants McCall and Ward in their individual capacities **REMAIN PENDING** in this case.

(3)  The defendants' motion for summary judgment, R. 14, is **GRANTED** with respect to the § 1983 jail condition claims and all the state law negligence claims against Defendant Letcher County Fiscal Court and Defendants McCall and Ward in their official capacities.

(4)  The § 1983 deliberate indifference to medical care claims against Defendant Letcher County Fiscal Court and Defendants McCall and Ward in their official capacities are the subject of the Court's Show Cause Order issued concurrent to this Memorandum Opinion and Order.  The Court will rule on these claims after reviewing Hall's response to the Show Cause Order.

This the 9th day of December, 2009.



Signed By:

_Amul R. Thapar_ AT

**United States District Judge**